## Isiah RUSS *v.* CITY OF CAMDEN

CR 73-167                                        506 S.W. 2d 529

### Opinion delivered March 18, 1974

*Lester E. Dole*, for appellant.

*Jim Guy Tucker*, Atty. Gen., by: *O. H. Hargraves*, Dep. Atty. Gen., for appellee.

LYLE BROWN, Justice. Appellant Isiah Russ was convicted by a jury of possessing intoxicating liquor for the purpose of sale without a license. The only point for reversal which we deem necessary to discuss — and in fact the only point considered to have merit — is the allegation that error was committed by the State in not producing an alleged search warrant at the trial.

For their search of the home and premises of appellant, the officers said they relied on a search warrant. The officers testified that the original warrant was handed to appellant, that he read it and handed it back to the officers. Appellant

and his wife testified that they never were served with such a warrant; in fact, that one was never shown them. Be that as it may, the important fact is that in the trial of this case in circuit court, the officers were questioned concerning the whereabouts of the search warrant. The reply was to the effect that it was introduced in evidence in the trial in municipal court. Documents purporting to be a transcript of the municipal court proceedings were filed in the circuit court. No search warrant, nor affidavit for search warrant, appears among those papers.

The United States Constitution, Amend. 4, and the Arkansas Constitution, Art. 2 § 15, are the cornerstones of our security against unreasonable search and seizure. Those constitutional requirements, together with our most recent statute, Ark. Stat. Ann. § 43-205 (Supp. 1973), rigidly protect the issuance of a search warrant without support of an accompanying affidavit for the search warrant. In *Mapp* v. *Ohio*, 367 U.S. 643 (1961) there was this situation which that court thought worthy of comment: "At the trial no search warrant was produced by the prosecution, nor was the failure to produce one explained or accounted for". When the State relies on a search warrant as justification for its search the burden is on it to show compliance with the statute, both as to the affidavit and the warrant itself. The responsibility is on the State to produce those documents at trial; otherwise, the accused has no opportunity to assail their validity. If the State cannot produce either of the instruments then it should follow approved procedure for establishing the contents thereof.

In view of the possibility of a retrial we should comment on one other argument advanced here. Appellant contends it was the duty of the State to produce for cross-examination the informer who purportedly made a purchase of intoxicants from appellant. The privilege of a police officer in refusing to divulge the identity of an informer depends upon the circumstances of a given case. *Davis* v. *Circuit Court of Pulaski County*, 244 Ark. 142, 424 S.W. 2d 149 (1968). In *Bennett* v. *State*, 252 Ark. 128, 477 S.W. 2d 497 (1972), we said: "Generally, whether the privilege of nondisclosure of an informer's identity applies depends upon whether the informer was present and participated in the alleged illegal transaction

with which the defendant is charged, or whether the informer was 'merely' one who supplied only a 'lead' to law enforcement officers to assist them in the investigation of a crime. The identity of an informer is required in certain instances, particularly where he was present as a participant".

Reversed and remanded.

HARRIS, C.J., dissents.

FOGLEMAN, J., dissents.

JOHN A. FOGLEMAN, Justice, dissenting. I cannot agree to the reversal of this case. To do so, the court must say that the finding of the trial judge as to the authority for the search had insufficient evidentiary support. Although it seems to me the substantial evidence rule should apply, I would affirm regardless of the test applied on review here—be it "substantial evidence," "preponderance of the evidence" or "clearly erroneous."

There was never any motion to suppress the evidence obtained by means of the search. A pretrial hearing was had upon a renewal of a motion to dismiss filed by appellant in the municipal court, where the case was first tried. The ground stated in that motion was that appellant was not presented with a search warrant or given a copy of it before he had been taken to the police station, which was subsequent to the search and the confiscation of a quantity of liquor, wine and beer. When the case was called for trial, appellant's attorney characterized the motion as one to dismiss the case for lack of jurisdiction. He never contended that it was anything else. The attorney expressly stated that the motion was not one to suppress evidence. Just before the beginning of the hearing appellant's attorney merely stated that no search warrant was in the file, without further comment.

In his testimony on the motion, Isiah Russ, while denying that the officers read or showed him a search warrant at the time of the search, admitted that they gave him a copy of the warrant about two and one-half hours after the officers had brought him to the police station. He also testified that

the officers told him they had "something in our pocket" saying they could search. Lieutenant Jack Dews of the Camden Police Department testified that he obtained the search warrant from Judge Plunkett and that, when he, Officer Greenlee and Mr. Blagraves knocked on appellant's door, he told appellant they had a search warrant to search for alcoholic beverages, read it to him and saw Russ read it. Dews confirmed Russ' testimony that a copy of the warrant was given Russ at the police station. Dews, in response to an inquiry by the trial judge, stated that the warrant had been introduced at the trial in municipal court. James Blagraves, an investigator for the Alcoholic Beverage Control unit, who accompanied Dews on the search, testified Dews had a search warrant, advised Russ of it, read and handed it to Russ, who handed it back to Dews. This testimony was corroborated by Patrolman Greenlee of the Camden Police Department. The court's inquiry of Officer Greenlee whether the city had the warrant drew the response that it had been misplaced.

No objection was made to any of the testimony recited hereinabove, but after all of it had been heard, appellant's attorney moved that polygraph tests be administered to appellant and the officers. When this motion was denied, this objection and response ensued:

MR. DOLE: Save our exceptions. They haven't got the warrant in it. If the warrant is not introduced, then this is nebulous evidence.

THE COURT: That's the first time that's been brought up. In view of this, do you have the warrants?

The circuit judge then denied the motion to dismiss, finding that the warrant had been read to Russ at the time of the search and took under advisement the belated motion to dismiss because the prosecution had failed to produce the search warrant. This was denied after the trial, upon the basis of the court's finding that there was substantial evidence that the search warrant was issued and that the defendant was given a copy of the same.

During the trial Police Chief Billy J. Allison testified that he saw the search warrant, that he had taken it to municipal

court where he had seen it introduced into evidence, but that he had been unable to locate it at the time of the trial in circuit court. He also stated that normally two copies are made of search warrants, one of which is turned over to the court and the other to the defendant.

Appellant's point for reversal is stated thus:

> Conviction should be reversed because no search warrant was ever issued to appellant at time of arrest and none produced at the trial.

He argues that a warrant had to be served by giving the defendant a copy at the time of the arrest or seizure, and complains that without introduction of the warrant itself, there is no evidence to support the search. He states the question thus:

> The question before this honorable Court is was this in compliance with our existing search and seizure laws. Appellant states it is not and that the trial Court lacked jurisdiction to proceed.

In order to find that the search was unreasonable, the circuit judge would have had to hold that the testimony of each of the officers was not credible, and that their testimony was outweighed by an inference drawn from the testimony of Russ that the search warrant was drawn after he arrived at the police station. I submit that such an inference is unwarranted and that some presumption of verity should arise from the testimony of four police officers who, presumptively, were only performing a routine duty. No attack was made on the credibility of any of the officers.

Even though it might be the better practice for searching officers to do as these said Lt. Dews did, i.e., at least read the warrant authorizing the search to the occupant of the premises searched or deliver him a copy, this is not required. We laid such a contention to rest in *Easley* v. *State,* 249 Ark. 405, 459 S.W.2d 410, saying:

> A search warrant serves as the officer's authority to make the search and seizure as well as his directions as

to where to search and what to seize. We have no statute in Arkansas requiring the officer to exhibit or reveal the search warrant at the time of the search but, as a matter of course, he must reveal his identity and his authority when requested to do so by the owner, occupant or one in rightful possession of the property to be searched or the thing to be seized.

We are of the opinion, and so hold, that the description of the property as set out in the search warrant was sufficient, and that it was not necessary for the officers to notify Easley of the impending search or to serve the search warrant on him.

Nothing whatever is said by appellant about the absence of an affidavit for the search warrant, so I will not dwell on that subject, except to say that the burden was upon the defendant to show a lack of probable cause for a search warrant that was issued. *Moore, Frazier & Davidson v. State,* 244 Ark. 1197, 429 S.W.2d 122.

Assuming that the best evidence rule applies when the state relies upon a search warrant to establish reasonableness of a search, I submit that the parol evidence established the issuance of a search warrant. This court treated the matter as early as 1860. In *Gracie v. Morris,* 22 Ark. 415, Gracie was sued upon allegations that he had broken into the dwelling of the plaintiff and taken personal property therefrom. Gracie defended upon allegations that he acted in obedience to the command of one Blakely, a lawful officer who had a warrant issued by a justice of the peace. The trial court rejected secondary evidence to establish the existence and content of the process under which Gracie sought to justify his actions, consisting of testimony to prove that a search warrant was issued, executed and returned, but thereafter lost or mislaid. Although this court held that production of the record of the warrant was indispensable, so long as it is supposed to be in existence, we reversed the judgment because of the refusal to permit this testimony, saying:

The defendant, Gracie, exhausted every means in his power to obtain the proof under which he justified, but all to no purpose, and though there was no direct proof

as to the manner of its loss, yet it is perfectly clear to our minds that it was not within his reach. If a party in the situation of the defendant could not be permitted to introduce parol evidence of the authority under which he acted, nothing could be more perilous than to yield obedience to an officer in the execution of the law. He has no right to the possession or control of the paper, and it would be productive of the greatest hardship and injustice, if he were left remediless in the event of the negligence, misfortune or corruption of the officers who are entrusted by the law with its safe keeping. We are clearly of the opinion, that if the defendant could prove the existence and contents of a paper, which, if produced, would have been a legal warrant for the part that he performed in the premises, he ought to have been permitted to do so. He offered the best evidence of which the case was susceptible, as the justice who issued, and the constable who executed it, necessarily must have been more conversant with the facts sought to be established, than any other persons.

Even though Gracie was not an officer responsible for the return of the warrant, the principle stated has been applied in other cases. In *Gracie,* we relied upon *Fowler v. More*, 4 Ark. 570, a civil action in which the court sustained the establishment of a summons and its return by parol evidence. In *Gates v. Bennett,* 33 Ark. 475, we said it was competent for the appellants to prove by parol evidence that a complaint and affidavit were filed in a replevin suit, a writ issued, bond executed and return made upon the writ, all in regular form, and had been lost or destroyed, even though the transcript of the justice of the peace court in which the proceedings were had, certified as a complete and perfect transcript of the docket entries in that court, revealed none of them.

Although a warrant for arrest, rather than a search warrant, was involved in *Calhoun v. State,* 180 Ark. 397, 21 S.W.2d 606, I do not perceive any material difference in the rules of evidence applied there and those we should apply where a search warrant is involved. Objection to parol testimony in regard to the issuance and execution of a warrant of arrest, which was material to a charge of escape,

was held admissible when loss of the writings had been shown.

It is difficult for me to perceive how it can be said that the evidence was insufficient to support a finding that the original search warrant had been lost and that its existence, nature and content had not been satisfactorily shown by parol evidence.

I would affirm the judgment.

I am authorized to state that the Chief Justice joins in this dissent.